IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS WOOD, | : | No. 3:16-cv-2450 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| SGT. DETWILER, OFFICER FOGELMAN, OFFICER BROWN, | : | |
| Defendants | : | |

## MEMORANDUM

Thomas Wood ("Wood"), a state inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), at all times relevant, housed at the State Correctional Institution at Rockview ("SCI-Rockview") Bellefonte, Pennsylvania, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983, on December 12, 2016, naming as Defendants Barry Detwiler ("Detwiler"), Andrew Fogleman ("Fogleman"), and Joshua Brown ("Brown"). (Doc. 1). The matter is proceeding *via* an amended complaint (Doc. 35) filed by Wood on June 2, 2017.

Presently pending is a motion (Doc. 65) for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf of all Defendants. For the reasons set forth below, the motion will be granted.

**I.** **Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." FED.R. CIV.P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex,.477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.    Statement of Material Facts

Wood alleges that Defendants "blatantly ignored" threats made by another inmate, Solomon Carter ("Carter") on December 8, 2014. (Doc. 35, p. 2). Thereafter, Carter "attacked and viciously assaulted [Wood] with an [sic] sharp object." (Id. at 2, 3). He avers that Defendants watched the assault "for several minutes before intervening." (Id. at 3). He further alleges that Defendants "knew of the serious risk that inmate Carter posed to [his] safety and failed to take reasonable steps to abate the risk, resulting in Inmate Carter's attack on [him]." (Id.).

3

A. Administrative Exhaustion

DOC Administrative Directive 804 ("DC-ADM 804"), entitled "Inmate Grievance System," provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which they can resolve problems or other issues relating to their incarceration. (Doc. 68-1, p. 3, ¶ 2). DC-ADM 804, encourages an inmate to attempt informal resolution with the Unit Manager or Officer-in-Charge prior to filing an official grievance. (Id. at p. 13). If informal resolution is unsuccessful, the inmate may then file an initial grievance with the Facility Grievance Coordinator at the facility where the grievance event took place. (Id.) DC-ADM 804 sets forth the following requirements concerning the contents of the grievance:

> 12. The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
>    a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
>    b. The inmate shall identify individuals directly involved in the event(s).
>
>    c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
>    d. If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

(Id. at p. 3, ¶ 5, p. 14; DC-ADM 804, § 1 (A)(12)(a)-(d)). If the inmate is dissatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision

4

with the Facility Manager within fifteen working days from the date of the initial review response. (Id. at p. 4, ¶ 8). Upon receiving a decision from the Facility Manager, an inmate may, within fifteen working days, submit an appeal to the final level of review, the Chief Grievance Officer, Secretary's Office of Inmate Grievances and Appeals (SOIGA). (Id. at p. 5, ¶ 10).

Following the attack, Wood filed a Grievance, which was assigned Grievance Number 543366, indicating that the attack occurred right in front of "corrections officers" and they failed to protect him. (Doc. 68-1, p. 61). He states that Carter "made it verbally clear to staff and officers that he was going to hurt someone" and that "Unit Manager of B/A Block Mr. Condo along with several officers knew he was going to attack someone prior to this assault and I happened to be that someone." (Id.) The grievance officer denied the grievance for the following reasons:

> Neither unit staff, nor Security Office staff, had received any information, either from Inmate Carter, or anyone else, that Inmate Carter was volatile or was going to "hurt someone." Your statement that inmate Carter had made it verbally clear to staff that he was going to hurt someone, has not been substantiated by any staff involved in this incident. Staff had no knowledge or indication that Inmate Carter was going to assault anyone; therefore, your claim that staff failed to "protect" you is unfounded.
>
> The Security Office reviewed video recording of the incident and has determined that staff, including Sgt. Detwiler and Officer Fogelman and Brown, responded promptly and appropriately; stopping the assault and separating you from Inmate Carter. The officers were neither negligent nor indifferent to the incident.
>
> Staff are not guilty of failing to protect you, nor of not preventing the incident. Your grievance is denied; as well as your claims for monetary compensation.

(Id. at 60).

In his appeal, Wood expresses dissatisfaction with the grievance officer's interpretation of his grievance. He states: "In Mr. Rackovan's response, he states that my claim of Inmate Carter's actions 'has not been substantiated by any staff 'involved' in this incident.' Clearly, Mr. Racokvan is taking the words in my initial grievance out of context. I made no claim that those 'involved' were the ones that knew of inmate Carter's intentions. Of course no one 'had received any information' of what inmate Carter had intended because an admission, by any staff, of that magnitude, would only 'help my situation.'" (Id. at 59). In upholding the Grievance Officer's response, and denying the appeal, the Facility Manager found that "[s]taff were not in possession of any information indicating Mr. Carter's intent to harm anyone. A review of available video footage and the reports both support that staff acted promptly and appropriately to this unforeseeable event. Claims of deliberate indifference or any form of staff neglect are unsubstantiated." (Id. at 58).

In his final appeal, he indicates that his "attorney is in possession of a list of D.O.C. employees that were aware of what Mr. Carter stated before moving him from one block to the other, where I was attacked. I also sent my attorney a list of individuals willing to testify of hearing what Mr. Carter ranted about!" (Id. at 57). The Chief Grievance Officer responded as follows: "A review of the record found that you are incorrect in you claim that staff were aware of a pending attack by the other inmates.

6

There is no evidence that staff were aware of a potential situation concerning the other inmate and you fail to provide any evidence to substantiate your claims. An investigation revealed that video footage was reviewed and demonstrated that staff acted promptly and appropriately to the attack. Staff stopped the attack and took measures to separate you and the other inmate. There is no evidence of deliberate indifference or a violation of DOC policy or procedures." (Id. at 56).

Although Wood pursued administrative relief to the final level of appeal, he failed to identify Defendants Detwiler, Fogelman or Brown in any grievance documents, despite being made aware of the names during the grievance process. (Doc. 68-1, ¶ 16).

B. Failure to Protect

Wood testified that he arrived at SCI-Rockview on November 25, 2014, shortly before the attack, that he did not know anyone at the jail, and that he had no issues with Carter prior to the attack. (Doc. 68-2, pp. 34-36, 42-45). He never heard or witnessed Carter threaten anyone, but he did overhear Carter tell guards that he was going to kill himself or someone else. (Id. at 47, 48, 50). He testified that he heard Carter "rant and rave" and witnessed "outbursts." (Id. at 49, 66). He also testified that, after the attack, other inmates informed him that Carter was a mental health patient that was not supposed to be in general population. (Id. at 45, 49, 52). It was also his understanding that this was not the first time Carter attacked someone. (Id. at 52).

Defendants Detwiler, Fogelman and Brown declare that they had no information that Inmate Carter posed a danger to Wood or others. (Doc. 68, ¶ 9).

C.  Failure to Intervene

Wood testified that, although he was involved in a conversation with other inmates, had his back toward the guards, and was unaware of where and unsure of how far away Defendants were at the time of the attack, he knows they were "in the premises." (Doc. 68-2, pp. 30, 33, 34, 38, 39). He stated that "all three [Defendants] did the exact same. They responded to this incident and they failed to intervene immediately." (Doc. 68-2, p. 23, 33, 58). When they arrived, they were "standing there just watching" or "did nothing." (Id. at 30, 34, 35, 39).

Defendant Brown declares that he was stationed at "the CB [Block] Front Door" on December 8, 2014, when he heard the radio transmission for a "fight in the 'day-room' in CB [Block]." (Doc. 68-3, ¶¶ 3, 4). He indicates that he responded immediately and that he and Defendant Fogleman separated the inmates and placed them in handcuffs. He transported Carter to the infirmary. (Id. at 6, 7). Defendant Fogleman indicates that he was stationed at the Officer Desk, which is the floor above the day room where the incident occurred. (Doc. 68-5. ¶ 3). C.O. Confer informed him that there was a fight in the day room in CB Block and they both ran to the scene. (Id. at 4, 5). Fogleman assisted Defendant Brown in separating the inmates and then transported Wood to the infirmary. (Id. at 6, 7). Defendant Detwiler was stationed at the CA [Block] Front Desk at the time he received a radio transmission reporting the fight in the CB Block day room. (Doc. 68-4, ¶¶ 3, 4). He ran to the location but, by the time he arrived, Defendants

Brown and Fogelman had already separated the inmates and placed them in handcuffs. (Id. at 5, 6). He searched the area and found the weapon used by Carter – two razor blades secured by a band-aid. (Id. at 7).

The video footage of the incident video was at all times in the possession of the Security Office of SCI-Rockview, and has not been altered, tampered with or modified. (Doc. 68, ¶ 10). It demonstrates that Defendants intervened in the incident less than a minute after its inception. (Id. at 7). The video contains three separate clips, BaseName-04, BaseName-05, and BaseName-06, each from a different viewpoint and each three minutes in length. (Doc. 88). In BaseName-06 Carter is seen walking alone and, without provocation, he lunges at Wood, who is seated at a table with other inmates. A violent physical altercation ensues, and all other inmates step back and clear the area. From this view, Defendants Fogleman and Brown enter the area approximately twenty-nine seconds after the assault begins. Wood and Carter are immediately separated and restrained. In BaseName-05, the officers are visibly on the scene within sixteen seconds of the attack. In BaseName-04, an officer is visibly seen radioing for assistance four seconds after the attack. Five seconds after that, Fogleman and Brown intervene and successfully separate Wood and Carter. Within thirty to forty seconds a whole host of corrections officers and staff are on scene. All three clips demonstrate that both Wood and Carter were removed from the area less than three minutes after the altercation began.

## III. Discussion

### A. Administrative Exhaustion

Defendants seek an entry of summary judgment based on Wood's failure to properly exhaust his administrative remedies, as required by 42 U.S. C. § 1997e(a), prior to initiating this action. The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, —U.S. —; 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr., 388 F.App'x 107, 108 (3d

Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. "As for the failure to [ ] identify [the] named defendants on the grievance form, ... to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, ... in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Pennsylvania Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (citing Spruill, 372 F.3d at 234).

Finally, whether an inmate has properly exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).[1]

Defendants specifically seek an entry of judgment based on Wood's failure to properly exhaust his administrative remedies in that he did not identify them, at any point throughout the grievance process, as individuals involved in the events of which he

---

[1] In accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded the parties the opportunity to be heard under Small, 728 F.3d at 268. (Doc. 73).

complains. Wood does not dispute this. Instead, he argues that he exhausted all remedies administrative remedies available to him. (Doc. 71, pp. 4-6).

It is undisputed that Wood fully exhausted the grievance concerning the December 12, 2014 attack in that he pursued the grievance to the final level of review. It is also undisputed that he failed to identify Defendants as being directly involved in the conduct of which he complains. In fact, in his appeal to final review he revealed that he had forwarded the names of DOC staff whom he believed to be responsible for the attack to his attorney but, at no point during the grievance procedure, did he disclose the names of these individuals. As noted *supra*, the standard used in determining whether a prisoner has exhausted the administrative process is whether he properly exhausted by complying with applicable grievance procedures and rules. The relevant DOC policy and pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (DC-ADM 804, § 1(A)(11)(b)). A similar provision in an earlier version of DC-ADM 804, required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit. Spruill, 372 F.3d at 234. The version in effect at the relevant time is even more cogent as it now contains the mandatory language, "shall identify." (Doc. 68-1, p. 3, ¶ 5, p. 14; DC-ADM 804, § 1(A)(12)(b)). The Spruill Court explained that the purpose of the regulation is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. Spruill, 372 F.3d at 234. "[I]t is clear, regardless of the purpose of the requirement, that Spruill requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural

default." Hemingway v. Ellers, 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing Williams, 146 F.App'x. at 557; see also, Singleton v. Beadle, No. 3:17-CV-220, 2018 WL 1129300, at *3 (M.D. Pa. Feb. 26, 2018); McNesby v. Heenan, No. 3:CV-16-0602, 2017 WL 4418421, at *4 (M.D. Pa. Oct. 5, 2017).

Moreover, under Spruill, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. See Spruill, 372 F.3d at 234 (noting that "Spruill did not [name Brown in his grievance], and has offered no explanation for his failure to do so"). Wood offers no explanation for his decision to forward to his attorney the names of those he believed responsible for the attack and to choose not to identify the Defendants in his grievance. Consequently, Defendants are entitled to an entry of summary judgment.

Alternatively, even had Wood properly exhausted, Defendants would be entitled to an entry of summary judgment.

B. Failure to Protect

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

13

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997) (citations and internal quotations omitted). To establish a failure to protect claim, inmates must demonstrate that (1) they are "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to their health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.2001).

For the purpose of establishing deliberate indifference, actual knowledge can exist where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and where "circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Id. (quoting Farmer, 511 U.S. at 842–43). Defendants Detwiler, Fogelman and Brown declare that they had

14

no information that Carter posed a danger to Wood or others. Wood fails to come forward with evidence that disputes these declarations. He offers general statements that Carter told guards that he was going to kill someone or himself, that Carter ranted and raved and had outbursts, and that other inmates informed him after the attack that Carter should have been in the mental health unit. However, such general statements are insufficient to demonstrate that Detwiler, Fogelman and Brown were actually aware of the existence of an excessive risk of harm. Further Wood fails to come forward with any evidence that would demonstrate that there was a pervasive, well-documented, or expressly noted substantial risk of inmate attacks, or that Defendants were exposed to information that would demonstrate that Carter posed an excessive risk of harm and, as such, they must have known about it. Consequently, Defendants are entitled to an entry of summary judgment on the failure to protect claim.

    C.    <u>Failure to Intervene</u>

With regard to Wood's Eighth Amendment failure to intervene claim, in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the

officer failed to intervene. Smith v. Mensinger, 293 F.3d 641, 650–51 (3d Cir. 2002). Importantly, "an officer is only liable if there is a realistic and reasonable opportunity to intervene." Id. at 651; see also Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012).

Wood contends that his Eighth Amendment rights were violated because, despite having the opportunity to intervene, Defendants chose to stand by and watch the assault for some unspecified number of minutes prior to intervening. The evidence of record indicates to the contrary. The declarations of Defendants, in which they declare that they immediately responded to the day room upon being notified of the fight, coupled with the video clips depicting Defendants intervening in, and successfully quelling, the altercation within seconds of its inception, clearly demonstrate that Defendants had the opportunity to intervene and did so within a realistic and reasonable time frame. Wood fails to come forward with evidence that disputes the video evidence and, consequently, fails to demonstrate that there is a genuine issue of material fact. Accordingly, Defendants are also entitled to an entry of summary judgment on the failure to intervene claim.

## IV. **Conclusion**

Based on the foregoing, Defendants' motion (Doc. 65) for summary judgment will be granted.

An appropriate Order will issue.

        **BY THE COURT:**

        s/James M. Munley
        **JUDGE JAMES M. MUNLEY**
        **United States District Court**